## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JOYCELYN PRESLEY AND**
**JAMES A. PRESLEY,**                    **CASE NO.**

    **Plaintiffs,**

**v.**

**GULF COUNTY SCHOOOL BOARD,**

    **Defendant.**

_____/

## **COMPLAINT**

Plaintiffs, JOYCELYN PRESLEY AND JAMES A. PRESLEY, hereby sue

Defendant, GULF COUNTY SCHOOL BOARD, and allege:

## **JURISDICTION**

1.     This is an action brought under the Americans with Disabilities Act

(ADA), codified at 42 U.S.C. § 12101, et seq. and the Florida Whistle-blower's Act

codified at Chapter 112, §112.3187, et seq., Florida Statutes.[1]

2.     Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal

question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C.

§ 1367 (supplemental jurisdiction).

---

[1]     Additional claims will be added after administrative exhaustion is
complete.

3.     This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

4.     At all times pertinent hereto, Plaintiffs, JOYCELYN PRESLEY and JAMES A. PRESLEY, have been residents of the State of Florida and either employed by the Defendant (Joycelyn Presley) or was an employee or a prospective employee of the Defendant (James Presley).

5.     Plaintiff Joycelyn Presley is a member of a protected class because she blew the whistle on actions of the Defendant and has an actual or perceived disability.   She also reported/objected to discrimination and was the victim of retaliation thereafter.

6.      Plaintiff James Presley is a member of a protected class because of his association with a person who is disabled and/or perceived to be disabled.  He also blew the whistle on actions of the Defendant and reported/objected to discrimination and was the victim of retaliation thereafter.

7.     At all times pertinent hereto, Defendant, GULF COUNTY SCHOOL BOARD, has been organized and existing under the laws of the United States.  At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.  Defendant was Plaintiff Joycelyn

Presley's employer and Plaintiff James Presley's employer or prospective employer it relates to these claims.

## CONDITIONS PRECEDENT

8.    Plaintiffs have satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

### PLAINTIFF JOYCELYN PRESLEY

9.    Plaintiff, a protected whistleblower, began her employment with Defendant in or around August 2021 and held the position of a teacher at the time of her wrongful termination on May 31, 2022.

10.    Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of her disability. Further, Plaintiff has been retaliated against because she disclosed Defendants' gross mismanagement, malfeasance, misfeasance, gross waste of public funds, gross neglect of duty, and/ or violation of one or more laws, rules, or regulations.

3

11.     The disparate treatment and retaliation came at the hands of specifically but not limited to Superintendent Jim Norton ("Norton,"), Assistant Superintendent for Business, Josh Dailey ("Dailey,"), Assistant Superintendent for Special Services, Joni Mock ("Mock"), Assistant Superintendent for Instruction, Lori Price ("Price") and Principal of Port St. Joe High School, Alisha Godwin ("Godwin").

12.     On July 30, 2021, Plaintiff interviewed for a teaching position for the subjects U.S. History, Government, and Economics for 8th and 12th graders. Defendant offered Plaintiff the teaching position on the same day as the interview.

13.      On August 10, 2021, the first day of school for students began. Later that week, Plaintiff met Norton for the first time when he asked about her Husband, James A. Presley.  Plaintiff husband is a former national league baseball player and coach and holds a Master's Degree in Educational Leadership and Curriculum Development with multiple other credentials.

14.     On October 21, 2021, Plaintiff reported a rat infestation in her assigned classroom to the school's office and to Godwin. Later in the week, Plaintiff arrived at the school to dispose of rat traps herself.

15.     On November 18, 2021, Plaintiff engaged in her first evaluation with Godwin. At the same time, Norton and Plaintiff James A. Presley began social outings as Godwin started requesting Plaintiff to report to work seven days out of the week, including the winter holidays.

4

16.     On January 6, 2022, Godwin's behavior drastically changed as she told Plaintiff to mind her business and scolded her for helping the Defendant's students with behavioral issues. Godwin's harsh manner toward Plaintiff continued as she called Plaintiff to report to her office three days in a row regarding comments about Plaintiff's husband James Presley. Godwin would enter Plaintiff's class and yell at her to mind her business in front of Plaintiff's fourth-period students. Shortly after Godwin yelled at Plaintiff, Plaintiff called Norton. She expressed that engaging Norton's social activities with her husband, James Presley, was causing Godwin to retaliate against and attack her. Godwin's harsh behavior grew towards Plaintiff and resulted in Godwin instructing her social circle to bully Plaintiff at the school. Norton responded that he would handle it and that Plaintiff would no longer have to report to Godwin.

17.     On January 26, 2022, weeks after Norton ensured Plaintiff he would handle Godwin's misconduct, MTSS District Advisor Lindsay Summerlin, entered Plaintiff's sixth period class and began yelling at Plaintiff in front of students. The following day Plaintiff texted Norton regarding Summerlin yelling at her. Norton then replied by advising Plaintiff to speak with Godwin and, if necessary, call the Department of Education. After learning about Summerlin yelling at Plaintiff, Godwin decided to schedule a conference with Plaintiff. Plaintiff told Godwin that she could not meet with him due to health issues. Godwin responded that it was

5

okay, and Godwin and Plaintiff would meet another week. Later, Plaintiff went to see her physician and learned her heart rate and blood pressure had increased substantially, exacerbating her medical condition. The physician then scheduled Plaintiff for treatment of her medical condition.

18.     On January 28, 2022, Plaintiff reported to the school's administrative office where Mock, Godwin, and Assistant Superintendent Lori Price locked her in a room against her will for a meeting. They demanded that she sit and engage with them despite her request for a union representative to be present. Plaintiff expressed to Mock, Godwin, and Price her health problems in an effort to prevent the meeting from further exacerbating them. Notwithstanding Plaintiff telling them that she had serious health issues, she was made to sit in the meeting for 45 minutes even as her alarm sounded four times reminding her of her emergency medical treatment. Shortly after, Plaintiff called her union to report the incident to Service Union Director Michael Petty.

19.     During this meeting, after her request for representation was denied, and her request to postpone the meeting due to health issues was denied, she was locked in the office and made to sit down for the meeting and questioned about her complaints within the School District.  During this meeting, that was initiated by the Defendant, Plaintiff discussed being yelled at

6

multiple times by administrators in front of her students.  She stated that she

had raised her hand during a November, 2021 faculty meeting and stated that

the children in Gulf Academy were not being fed, at which time Godwin's

response was "We forget about them, it is what it is." She said during the

January 28, 2022 meeting that in November 2021, Price referred to the Gulf

Academy as an "Educational Wasteland".

20.    Plaintiff also explained during the January 28, 2021 that

Disciplinary Referrals were altered and changed for students based on parents'

wealth and skin color.  She stated that the "Mean Girl Group" of Godwin's close

friends made life miserable and that others not from Port St. Joe were bullied

on a regular basis.  Plaintiff even explained that she and other teachers had

been told they could not work with students at Gulf Academy on occasions

because they are there for a reason.  These students were still on Plaintiff's

grade book and she was still responsible for them according to Florida law.

21.    Plaintiff also disclosed in response to questions asked during the

January 28, 2022 meeting that she was yelled at and sent derogatory emails for

standing up for a student whose first language was not English and whose

7

family came to her personally asking for assistance with language barriers because no one would help them at the school. They would not come to the school because of their illegal status and did not want to cause a problem.

22.    She disclosed during the meeting that grades and absences were changed to make children exempt from exams that should not have been, and kids were being punished differently for the same offenses based on sports, parents, and money status. She was told that "this is how things are done in a small district."

23.    During this meeting, Plaintiff voiced her opinion about multiple infractions being committed by the administrators and staff at her PSJ and the Defendant.

24.    On February 3, 2022, Plaintiff spoke with Price and Godwin on two separate occasions about bullying of students. However, Price and Godwin took no action. Plaintiff feared losing her teaching license after overhearing Godwin on the phone with a parent threatening to take her right to teach. Plaintiff then called the union for protection.

25.    Days later, Godwin called Plaintiff into her office to give her an Appendix E 29 for disciplinary action. Plaintiff did not feel comfortable and refused

to meet without the union present. Shortly thereafter, Union Representative Krissy Gentry, and Petty were in a meeting with Plaintiff at the Defendant's office for disciplinary action. This meeting resulted in both Plaintiffs receiving an apology from Price, Godwin and no disciplinary action being levied.

26.     On February 17, 2022, Plaintiff was diagnosed with covid and was out for two and a half weeks. Following Defendant's Spring Break, on March 8, 2022, Plaintiff returned to work. However, Godwin continued her harsh behavior towards Plaintiff. Godwin removed a college student who had been observing Plaintiff's class all year out of the class and told him he was not allowed to come to Plaintiff's classroom again.

27.     On March 28, 2022. Plaintiff James Presley spoke with Program Director, Office of Professional Practices Services, Division of Public Schools, Florida Department of Education (DOE), Ms. Morgan Thompson and inquired about filing a complaint pertaining to the actions of the Defendant involving primarily his wife and other matters that he heard about actions within the School District that would constitute ethical violations and disparate treatment of students.

28.     On April 8, 2022, Plaintiff James Presley filed a complaint with the Department of Education regarding grade changing and absence tampering within the Defendant.

29.     On April 10, 2022, Plaintiff James Presley filed a complaint with the DOE detailing Gulf Academy's (a disciplinary school in Gulf County, Florida) failure to provide adequate nutrition for students.

30.     On April 26, 2022, a month after Godwin, Price, and Petty had already evaluated Plaintiff and after Defendant would have been notified about James Presley's complaint to DOE, they called Plaintiff to the office for a second evaluation in which she ultimately received "effective" rather than "highly effective" although Plaintiff completed all responsibilities to be rated "highly effective."

31.     On April 27, 2022, after Plaintiff was yelled at by another teacher, Sharon Hoffman earlier that day, Plaintiff was called into a meeting with Godwin about the bullying by Hoffman and she asked Godwin at that time whether this was retaliation for the complaints that Plaintiff's husband had filed with DOE, because of Plaintiff's medical condition or the reports that she previously made.  Godwin said she would "look into it."

32.     On May 17, 2022, Godwin called an emergency faculty meeting regarding the aforementioned complaint made to the Florida Department of Education. Shortly thereafter, Plaintiff received an email on the way home from Godwin saying Defendant was investigating her for the reports made by her husband, James Presley, to the Florida Department of Education.

33.    Plaintiff then called Norton after responding to Godwin's email and told Plaintiff they would investigate her because Defendant could not examine James A. Presley as he technically did not work for the Defendant.

34.    The following day, on May 18, 2022, Godwin and Will Armstead, the attorney for the Defendant, called Plaintiff to Godwin's office. Godwin told Plaintiff's health made her a liability to the school, and they would be investigating her. Armistead denied Plaintiff the opportunity to sign a document that would have allowed her to have her union representative present during that meeting.

35.    During this meeting, Plaintiff turned to Will Armistead and said "you hear this right? My health was not a liability when I was forced to have the meeting against medical advice in January but now my health is a liability?"  She asked Godwin, you ignored my health before but now you are sending it home for it now?

36.    Plaintiff then went to the nurse at the Port St. Joe High School because her blood pressure was high, after which she went back to her classroom.  However, Godwin again took Plaintiff out of her classroom. Godwin, a teacher, and Armistead sent Plaintiff home on forced administrative leave. Later that night, Petty, Plaintiff's union representative, called Plaintiff with Norton on a three-way call during which Norton said that she should accept a deal to leave the Defendant.  Plaintiff told Norton that she was fine to teach medically and would be returning the following day.

11

37.     Two hours later, Plaintiff received an email from Dailey that she was on forced administrative medical leave and could not return to school until she received medical clearance from her physician.  However, by the time that Plaintiff was able to schedule an appointment with her cardiologist, on May 20, 2022, Plaintiff was informed to clean her classroom as she would no longer be allowed to return to the school. A week later, Defendant advertised Plaintiff's job online.

38.     Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS
## PLAINTIFF JAMES A. PRESLEY

39.     Plaintiff, a protected whistleblower, was a prospective and then actual employee of the Defendant in 2022.  On March 8, 2022, Plaintiff was approved by the School Board as a substitute teacher and he received a call on March 9, 2022 to teach.  Plaintiff was unable to accept the teaching responsibility on March 9, 2022 because of a personal circumstance.

40.     Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his reports and/ or objections to mismanagement, malfeasance, misfeasance, gross waste of

public funds, gross neglect of duty, and/ or violation of one or more laws, rules, or regulations and because of his association with his disabled wife.

41.    The disparate treatment and retaliation came at the hands of, specifically but not limited to, Superintendent Jim Norton ("Norton"), a white male, and Assistant Superintendent for Business, Josh Dailey ("Dailey,"), a white male.

42.    On August 15, 2021, upon the discovery of Plaintiff's educational background and experience as a professional baseball player and coach, that was based on a conversation between Norton and Plaintiff's wife, Joycelyn Presley, Norton, Price, and Assistant to the Superintendent, Mary Lou Cumbie, met with Plaintiff to speak with him about possible employment with Defendant. Plaintiff responded by informing Norton, Price, and Cumbie that he was indeed interested in the opportunity, but only as an administrator.

43.    Plaintiff emphasized that he did not find interest in becoming a teacher or coach. Norton informed Plaintiff that things were happening soon and suggested that Plaintiff and Norton maintain communication.

44.    Throughout the Fall Semester of 2021, Plaintiff and Norton met together numerous times for both professional and personal purposes. The pair attended high school football games and went to lunch regularly. Norton introduced Plaintiff to several district officials and contractors and noted that he would be working with the district soon.

13

45.     On January 5, 2022, Norton called Plaintiff to meet in his office. The meeting at Norton's office included Norton, Price, and Cumbie. During the meeting, Norton, Price, and Cumbie discussed with Plaintiff working for the Gulf County School District as a principal or assistant principal. Plaintiff believes Norton, Price, and Cumbie were enticing every employee in Norton's office to join them in employing Plaintiff as a principal or assistant principal.

46.     On January 24, 2022, Plaintiff received a phone call to engage in a meeting with Norton, Cumbie, Price, Dailey, Mock, Financial Director Evan Clark, Director of Assessment and Certification Tracey Bowers, and Wewahitchka High School Administrator Renae Lynn, at Gulf County School District Office. The meeting was scheduled to discuss plans for the upcoming school year. During the meeting, all administrators in attendance agreed to select Plaintiff as an assistant principal for Port St. Joe High School. All administrators in attendance decided that once the principal of Port St. Joe High School advanced to Assistant Superintendent, Plaintiff would then become principal of the school.

47.     All administrators in attendance agreed that Plaintiff would start as a substitute teacher in January 2022 to give Plaintiff six months of employment in the second half of the school year and earn experience working in the school district.

48.     On January 28, 2022, Plaintiff received a phone call from the Appraiser and Owner of Appraisal Group of North Florida, LLC, Matt Terry. Terry asked

Plaintiff to meet Terry at his office located at 228 Reid Street, Port St. Joe, Fl 32456. Plaintiff responded, "I'll be in town within the hour, and I will stop by." Plaintiff arrived at Terry's office and Terry notified Plaintiff that Norton wanted to meet with Plaintiff away from the Gulf County School District office. Plaintiff responded, "sure, call Norton to meet at the office." Norton and Dailey arrived at Terry's office, mingling amongst each other until Plaintiff questioned why he had been called to meet at Terry's office. Norton explained to Plaintiff that the meeting at Terry's office was about a Facebook post and to discuss an incident between Plaintiff's wife, Joycelyn Presley, and Summerlin.

49.   Plaintiff informed Norton that Plaintiff heard Summerlin begin shouting in a tone of frustration towards his wife as Summerlin entered the area containing children. Plaintiff further expressed to Norton that Plaintiff felt Summerlin's actions were unprofessional and inappropriate considering her level of authority at Port St. Joe High School. Norton and Dailey both agreed that Summerlin would be penalized for the actions.

50.   Norton informed Plaintiff of Plaintiff's wife, Joycelyn Presley, undergoing a meeting to investigate the Summerlin incident. Plaintiff told Norton that he was under the impression that Ms. Presley sent Godwin a text message the previous night informing Godwin that she could not meet that week because the Summerlin incident caused substantial stress on her by increasing her blood

pressure. The text message concluded with Joycelyn Presley informing Godwin to let things calm down and reconvene the following week.

51.    Norton also expressed his concern regarding the Facebook post made by Ms. Pressley. Plaintiff was unaware of the Facebook post and suggested Norton read the post to him. In the post, Ms. Presley discussed her training as a flight attendant with a teacher from Bay County. Norton advised Plaintiff that it is best if Plaintiff's wife remained off social media platforms and lets things cool down. Norton then emphasized that if Plaintiff's wife does not stay off social media, Plaintiff's future employment with Gulf County School District may be in jeopardy. Plaintiff responded to Norton and Dailey that his wife had done nothing wrong.

52.    During that meeting, Plaintiff James Presley was notified about the contemporaneous meeting being held with his wife and he told Norton that his wife's health should have prevented that meeting from occurring and that they should not be having that meeting because of her health.

53.    Plaintiff then learned of the incident that occurred on January 28, 2022 with his wife, as described above, including all of the matters that she reported during that meeting.

54.    As a result of the incident with his wife and other matters that he learned were occurring within the Defendant, including ongoing retaliation against his wife from January 28, 2022 through March, 2022, on March 28, 2022. Plaintiff spoke

16

with Program Director, Office of Professional Practices Services, Division of Public Schools, Florida DOE, Morgan Thompson, and inquired about filing a complaint and was ultimately told to file a complaint with the Office of the Inspector General (IG) with DOE.

55.   On April 8, 2022, based on information that Plaintiff received from his wife as outlined above, Plaintiff filed a complaint with the DOE regarding grade changing and absence tampering.

56.   On April 10, 2022, Plaintiff filed a complaint with DOE detailing Gulf Academy's (a disciplinary school in Gulf County, Florida) failure to provide adequate nutrition for students for weeks on end.

57.   After the Defendant learned of Plaintiff's reports in March and April, 2022, the position that Plaintiff James Presley was going to fill was advertised to be filled.

58.   On May 4, 2022, Plaintiff James Presley went to DOE and spent around two hours with the Office of Professional Practices detailing the misfeasance and malfeasance within the Defendant including without limitation the matters that he reported on April 8 and 10, 2022.

59.   On May 10, 2022, Plaintiff reported student testing issues to DOE, as he had learned that laws were being broken for testing students and eleven seventh grade students were given the wrong math test.

17

60.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the statutes referenced above.

**COUNT I**
**DISABILITY DISCRIMINATION JOYCELYN PRESLEY**

61.     Paragraphs 1through 38 above are re-alleged and incorporated herein.

62.     This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, et seq.

63.     Plaintiff has been a victim of discrimination on the basis of her actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, she was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

64.      Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

65.     Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

66.    In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

67.    The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's termination from Respondent's employment.

68.    Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

69.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief under this count.

## COUNT II
## ADA RETALIATION- JOYCELYN PRESLEY

70.     Paragraphs 1 through 38 above are re-alleged and incorporated.

71.     Defendant is an employer as that term is used under the applicable statutes referenced above.

72.     This count sets forth a claim for unlawful retaliation under 42 U.S.C §12203.

73.     Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices under 42 U.S.C. §12101, et seq. and adverse employment actions were then taken against Plaintiff.

74.     Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq or encouraging another to do so.

75.     The foregoing unlawful actions by Defendant were purposeful.

76.     Because of Plaintiff's reporting, she was the victim of retaliation, as relayed in part above, including without limitation her termination by Defendant.

77.     Plaintiff is a member of a protected class because of her reporting of Defendant's unlawful employment practices or association with another who reported Defendant's unlawful employment practices, and Plaintiff was a victim of

retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

78.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief under this count.

## COUNT III
### FLORIDA PUBLIC WHISTLEBLOWER RETALIATION- JOYCELYN PRESLEY

79.    Paragraphs 1 through 38 above are incorporated herein by reference.

80.    This count sets forth a claim against Defendant under §112.3187, et seq., Florida Statutes.

81.    Plaintiff was a public employee protected under the provisions of Chapter 112, Florida Statutes.

82.    As stated more specifically in part above, Plaintiff reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of her normal chain of

command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that she reported. Plaintiff also disclosed this information when she participated in investigations, hearings, or other agency inquiries.  Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Florida Statutes.

83.    After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above including without limitation her termination.

84.    Plaintiff's termination was an adverse result of her reporting violations of rules, regulations or laws, and/or her reporting malfeasance, misfeasance or gross misconduct, and/or her participating in investigations, hearings or other inquiries, specified in part above.

85.    The actions of all employees within Defendant who affected Plaintiff's employment adversely did so at least in part in retaliation against her for her "whistleblowing" activities.

86.    As a direct and proximate result of the actions taken against her by Defendant, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, loss of the enjoyment of life, emotional and pain and suffering damages and other tangible and intangible damages.  These damages have

occurred in the past, are occurring at present and will occur in the future.  Plaintiff is entitled to injunctive relief.

## COUNT IV
## DISABILITY (ASSOCIATION) DISCRIMINATION—JAMES PRESLEY

87.    Paragraphs 1-3, 6-8, 39-60 above are re-alleged and incorporated herein.

88.    This count sets forth a claim for discrimination on the basis of Plaintiff's association with a person, his wife, who suffers from an actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, et seq.

89.    Plaintiff has been a victim of discrimination on the basis of his association with his wife who had an actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment or prospective employment with Defendant, he was treated differently than similarly situated employees who are not associated with a person who is disabled, perceived as disabled, or who has a comparable record of impairment.

90.    Defendant is liable for the differential treatment of Plaintiff, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

91.     Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

92.     In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

93.     The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's employment being placed on hold with Defendant and he was terminated/not hired.

94.     Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

95.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the

past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief under this count.

## COUNT V
## ADA RETALIATION—JAMES PRESLEY

96.   Paragraphs 1-3, 6-8, 39-60 above are re-alleged and incorporated.

97.   Defendant is an employer as that term is used under the applicable statutes referenced above.

98.   This count sets forth a claim for unlawful retaliation under 42 U.S.C §12203.

99.   Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices involving his wife under 42 U.S.C. §12101, et seq. and adverse employment actions were then taken against Plaintiff.

100.   Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq or encouraging another to do so.

101.   The foregoing unlawful actions by Defendant were purposeful.

102.   Because of Plaintiff's reporting or association with another who reported Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as

relayed in part above, including without limitation Plaintiff's employment being placed on hold with Defendant.

103.   Plaintiff is a member of a protected class because of his objection to the way his wife was treated and/or because of the fact that he was associated with her and she reported Defendant's unlawful employment practices, and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

104.   As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is entitled to equitable/injunctive relief under this count.

**COUNT VI**
**FLORIDA PUBLIC WHISTLEBLOWER RETALIATION – JAMES**
**PRESLEY**

105.   Paragraphs 1-3, 6-8, 39-60 above are incorporated herein by reference.

106.   This count sets forth a claim against Defendant under §112.3187, et seq., Florida Statutes.

107. Plaintiff was a public employee protected under the provisions of Chapter 112, Florida Statutes.

108. As stated more specifically in part above, Plaintiff reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of his normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules, regulations and laws that she reported. Plaintiff also disclosed this information when she participated in investigations, hearings, or other agency inquiries. Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Florida Statutes.

109. After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above including without limitation his termination.

110. Plaintiff's termination and/or not being hired by the Defendant was the result of him reporting violations of rules, regulations or laws, and/or his reporting malfeasance, misfeasance or gross misconduct, and/or his participating in investigations, hearings or other inquiries, specified in part above.

111.    The actions of all employees within Defendant who affected Plaintiff's employment adversely did so at least in part in retaliation against him for his "whistleblowing" activities.

112.    As a direct and proximate result of the actions taken against him by Defendant, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, loss of the capacity for the enjoyment of life, emotional pain and suffering damages and other tangible and intangible damages.   These damages have occurred in the past, are occurring at present and will occur in the future.  Plaintiff is entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendant for the following:

> (a)    that process issue and this Court take jurisdiction over this case;

> (b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiffs;

> (c)    enter judgment against Defendant and for Plaintiffs awarding all legally-available general and compensatory damages and

economic loss to Plaintiffs from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiffs permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiffs awarding Plaintiffs' attorney's fees and costs;

(f)     award Plaintiffs interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand a trial by jury on all issues herein that are so triable.

Dated this 5th day of September, 2022.

Respectfully submitted,

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFFS